HANLEY *v.* INGALLS.

1. MUNICIPAL CORPORATIONS — CONFLICTING PROVISIONS OF CITY CHARTER—CONSTRUCTION.

Where two provisions of a city charter apparently conflict, they should be so construed as to make both effective if it can be done without doing violence to the language used.[1]

2. SAME—DETROIT CHARTER—CONSTRUCTION.

Although section 21, chap. 1, tit. 8, of the charter of the city of Detroit, provides that the city treasurer sell to the highest bidder any building on land taken in condemnation proceedings, said section is not mandatory, in view of

[1] Municipal Corporations, 28 Cyc. p. 154; Statutes, 36 Cyc. p. 1129.

title 3, chap. 1, § 12, subds. *g*, *h*, and *t*, and section 16, chap. 1, tit. 8, authorizing the city council to enter upon such land after the compensation therefor has been paid, and remove the buildings or other obstructions therefrom.[2]

Certiorari to Wayne; Parker (James S.), J., presiding.    Submitted June 15, 1926.    (Calendar No. 32,560.)    Decided July 22, 1926.

Mandamus by John Hanley to compel Guy L. Ingalls, city treasurer of Detroit, to accept a bid for certain property in condemnation proceedings.    From an order granting the writ, defendant brings certiorari. Reversed, and petition dismissed.

*Charles P. O'Neil,* Corporation Counsel, and *James H. Lee,* Assistant Corporation Counsel, for appellant.

*Richard I. Lawson,* for appellee.

BIRD, C. J.    The city of Detroit instituted proceedings to widen Temple avenue.    The widening line took off nearly 20 feet of plaintiff's property upon which there was located an apartment building.    The city treasurer, acting under the charter, offered the portion cut off for sale.    The only bidder was plaintiff, who owned an adjoining lot, and was desirous of purchasing it and moving the apartment house thereon.    The bid of plaintiff was $600, which was afterwards increased to $1,500.    The treasurer thought this bid too low and referred the matter to the council.    The council ordered that part of the building taken demolished by the commissioner of public works.    Thereupon Mr. Hanley commenced these proceedings to prohibit the destruction of the building and to compel defendant to accept the bid of plaintiff.    After a hearing a writ of mandamus was ordered in accordance with the prayer of plaintiff's petition.

[2]Municipal Corporations, 28 Cyc. p. 629.

The plaintiff bases his position on section 21 of chapter 1, title 8, of the city charter:

"In case there is on the private property taken, a building or other structure, the same shall be sold by or under the direction of the city treasurer; the amount produced by the sale shall belong to and be paid to the fund for paying the compensation awarded for the property taken, and the council shall cause the proper proportion of such amount to be credited and applied in reduction of the sums to be raised to pay the award."

It is claimed by plaintiff that the provisions of the city charter are mandatory, and that the treasurer must proceed to sell the same to the highest bidder, notwithstanding any order or direction the council may make concerning it.

It is claimed by the city attorney that this provision must be read in connection with the following authority granted to the council, and if both provisions cannot stand section 21 must give way:

"Whenever the amount of the compensation is in the treasury, and thus secured to be paid, the council may enter upon and take possession of and use such private property for the purpose for which it was taken, and may remove all buildings, fences and other obstructions therefrom. In case of resistance or refusal on the part of any one to the council or its agents and servants entering upon and taking possession of such private property for the use and purpose for which it was taken, at any time after the amount of the compensation aforesaid is actually in the treasury ready to be paid to those entitled thereto, the council by the corporation counsel may apply to the court, and shall be entitled, on making a sufficient showing, to a writ of assistance to put the city in possession of the property." Title 8, chap. 1, § 16.

While there is an apparent conflict of authority in the two provisions we think they should be so construed as to make both provisions effective, if it can be done

without doing violence to the language.    We think a better view of section 21 is that after property has been acquired in this way the treasurer shall proceed to sell it if the common council makes no order concerning it.    If the common council does make some order concerning it, that order must be followed.    The treasurer is no more than an administrative officer, while the common council is the legislative body of the city.    It could hardly be presumed that the city intended to give an administrative officer the power to overrule the fiat of the council after placing within its jurisdiction the power to do just what was done in this case.    If we construe the provisions in this manner both provisions may stand and be effective.

Our attention has been called by the city attorney to certain other provisions of the charter investing the council with power to legislate with reference to city property.    These provisions strengthen our views already expressed.    Title 3, chap. 1, § 12, subds. (*g*), (*h*) and (*t*), of the city charter.

Entertaining these views, it will follow that the order of the trial court will be reversed and plaintiff's petition dismissed.    It being a public matter, no costs are allowed.

SHARPE, SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.